IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARVIN L. BROWN JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NEBRASKA DEPARTMENT OF ) <br> CORRECTIONAL SERVICES, ) <br> ROBERT HOUSTON, Director, ) <br> MICHAEL KENNEY, Director, ) <br> SCOTT FRAKES, Director, DIANE ) <br> SABAKA RHINE, RANDY KOHL, ) <br> Medical Director, FRANCIS ) <br> BRITTEN, Warden, MARIO ) <br> PEARTZ, Warden, BRIAN GAGE, ) <br> Warden, SCOTT BUSBOOM, ) <br> Associate Warden, SHAWN ) <br> SHERMAN, Unit Admin., DR. JEFF ) <br> DAMME, DR. CASEBOLT, ) <br> KIMBERLY DOHT, APRN, ) <br> CHERYL FLINN, LUE YOUNG, ) <br> CHRIS, PA/RNs, T PELLA, CPL ) <br> Officer, TAYLOR, and FALK, ) <br> Caseworker and Case Manager, all in ) <br> their official and individual ) <br> capacities, ) <br> ) <br> Defendants. ) <br> ) | 8:16CV217 <br><br> **MEMORANDUM** <br> **AND ORDER** |

    Plaintiff Marvin Brown, Jr., an inmate at the Tecumseh State Correctional Institution, filed his Complaint (Filing 1) in this matter on May 17, 2016, and a Supplemental Complaint (Filing 18) on July 5, 2016.[*] This court has given Plaintiff

---

[*] Due to technical issues caused by the length of the footnotes in this Memorandum and Order, endnotes are used instead of footnotes.

leave to proceed in forma pauperis. (Filing 8.) The court now conducts an initial review of Plaintiff's complaints to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I. SUMMARY OF COMPLAINT

Plaintiff's complaints—totaling 409 pages and consisting of repetitive factual allegations and requests for relief, legions of grievances and responses, and medical records from both correctional institutions and outside providers—assert that the defendants, in their individual and official capacities, violated his constitutional and statutory rights when they disregarded his knee and back problems in placing him in various cells at the Lincoln Diagnostic and Evaluation Center, the Lincoln Correctional Center ("LCC"), and the Tecumseh State Correctional Institution ("TSCI") from March 30, 2010, to February 8, 2016.

Liberally construing Plaintiff's pleadings, Plaintiff brings 42 U.S.C. § 1983 claims alleging that the defendants subjected him to cruel and unusual punishment by being deliberately indifferent to his serious medical needs when the defendants refused to acknowledge and accommodate his physical limitations and disability, as determined by the Nebraska Department of Education and the Social Security Administration. Plaintiff also purports to bring a claim under the Nebraska Correctional Health Care Services Act, Neb. Rev. Stat. §§ 83-4,153 to 83-4,165 (Westlaw 2016), and I construe Plaintiff's complaints to assert a claim under the Americans With Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*, as amended ("ADA"), based on the defendants' alleged refusal to accommodate his ailments during his incarceration.

Specifically, Plaintiff alleges that on May 6, 2009, the Douglas County Department of General Assistance determined that Plaintiff could perform "light duty work only—no prolonged standing/walking," and the Social Security Administration ("SSA") issued a decision on September 2, 2009, that Plaintiff was disabled from

2

January 1, 1998, to September 2, 2009. (Filing 1 at CM/ECF pp. 34-45, 51, 99-104.) The "medical source statement," which was given "great weight" by the SSA, was submitted by Dr. Michael O'Neil, a physician at Nebraska Orthopaedic Associates, who opined that Plaintiff should never climb ladders or scaffolds, kneel, crouch, or crawl, and should not stand more than one hour without interruption. (Filing 1 at CM/ECF p. 42.) The SSA found that Plaintiff had several "severe impairments"[1] and "due to chronic pain, the claimant is unable to sustain the performance of any work." (Filing 1 at CM/ECF p. 101.)

Plaintiff alleges that despite the SSA's disability finding, the defendants gave him a "tub" bed and placed him in an upper bunk for part of his incarceration, both of which were hard for him to maneuver with his pre-existing knee and back problems; placed him in upper-tier cells that required him to climb stairs; assigned him to some cells that did not have grab bars by the toilet; and assigned him to do kitchen work that required prolonged standing—all of which aggravated his pre-existing knee and back problems, causing him a great deal of pain. Plaintiff asserts that he has "continued to experience difficult living condition arrangements ongoing." (Filing 1 at CM/ECF p. 21 (capitalization & spelling corrected).)

The attachments to Plaintiff's complaints indicate that when Plaintiff was in Nebraska Department of Correctional Services ("NDCS") intake on March 30, 2010, he reported that he could not climb stairs due to a rod in his ribs and screws in his knee, and that his medical records were with the Lancaster County Jail. That same day, NDCS called Lancaster County to verify Plaintiff's claimed medical condition, and the Lancaster County nurse reported that Plaintiff had no restrictions while he had been incarcerated at the county facility since December 2009. (Filing 1 at CM/ECF p. 54.)

Starting almost immediately after his incarceration, Plaintiff complained weekly (and often more) to various defendants that the SSA had classified him as disabled, that he had physical restrictions that prevented him from being placed in certain cells,

3

and that requiring him to be in a top bunk or "tub" bed and in an upper-tier cell aggravated his already painful knee and back conditions. The defendants responded to each of Plaintiff's requests and provided him with many items to relieve pain,[1] diagnostic medical visits and imaging,[2] surgery,[3] and cell reassignment.[4] The defendants also repeatedly tried to obtain the disability determinations and supporting medical records to which Plaintiff referred.[5]

Plaintiff requests $20 million in damages, as well as injunctive relief requiring that all NDCS employees acknowledge his "prescribed limitations and activities" and allow him to permanently "reside in a medically equipped cell." (Filing 1 at CM/ECF pp. 5-6.)

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds

for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

### III.  DISCUSSION OF CLAIMS

**A.  § 1983 Claims**

**1. Immunity**

Plaintiff has sued NDCS and several of its administrators and medical staff members in both their individual and official capacities. Plaintiff seeks monetary relief for alleged past violations of federal law, as well as injunctive relief. Thus, the initial question presented is whether the Eleventh Amendment bars these claims.

The Eleventh Amendment to the United States Constitution provides states, state agencies, and state officials acting in their official capacities with immunity from suits brought by citizens of other states and from suits brought by a state's own citizens. *See Hadley v. North Arkansas Cmty. Technical Coll.*, 76 F.3d 1437, 1438 (8th Cir. 1996); *Hans v. Louisiana*, 134 U.S. 1, 15 (1890). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g., Hans*, 134 U.S. at 17; *Nevels v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981). An exception to this immunity was recognized by the Supreme Court in *Ex Parte Young*, 209 U.S. 123 (1908), which permits prospective injunctive relief against state officials for ongoing federal law violations.

There is nothing in the record before the court showing that the State of Nebraska waived, or that Congress overrode, sovereign immunity in this matter as to Plaintiff's § 1983 claims. Thus, Plaintiff's § 1983 claims for monetary relief for alleged past violations of the Constitution against defendants NDCS and its administrators and medical staff in their official capacities are barred by the Eleventh Amendment and must be dismissed. *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (Eleventh Amendment bars claims against state and its agencies for any kind of relief; Eleventh Amendment bars claims for money against state officials in their official capacities); *Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2012) (per curiam) (section 1983 provides no cause of action against agents of the state acting in their official capacities; sovereign immunity bars claim against state-agency employees for monetary damages under federal act).

In addition, a suit may be brought under §1983 only against a "person" who acted under color of state law. A state, its agencies and instrumentalities, and its employees in their official capacities are not a 'persons' "as that term is used in §1983, and [are] not suable under the statute, regardless of the forum where the suit is maintained." *Hilton v. South Carolina Pub. Railways Comm'n*, 502 U.S. 197, 200-01 (1991). *See also McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008) (states, arms of the state, and state officials acting in their official capacities are not subject to suit under § 1983). Thus, §1983 does not create a cause of action against the NDCS and its administrators and medical staff in their official capacities.

### 2. Eighth/Fourteenth Amendment

Plaintiff complains that the defendants in their individual capacities subjected him to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments because they were deliberately indifferent to his serious medical needs when they refused to acknowledge and accommodate his physical limitations and disability in placing him in various cells at the Lincoln Diagnostic and Evaluation Center, the LCC, and the TSCI from 2010 to 2016.

To prevail on an Eighth Amendment claim, Plaintiff must prove that the defendants acted with deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes both an objective and a subjective component, requiring the plaintiff to demonstrate that (1) he suffered from objectively serious medical needs, and (2) the defendants knew of, but deliberately disregarded, those needs. *See Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). For a claim of deliberate indifference, the prisoner must "show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted). It is not an Eighth Amendment violation when defendants, in exercising their professional judgment, refuse to implement an inmate's requested course of treatment. *Vaughn v. Gray*, 557 F.3d 904, 908-09 (8th Cir. 2009).

Here, assuming that Plaintiff suffers from an objectively serious medical need and that the defendants knew of that need, Plaintiff has failed to allege that the defendants deliberately disregarded those needs. When Plaintiff repeatedly told NDCS that he was disabled and that he had records that established his disability, Defendants actively sought those records from several sources. Further, in response to Plaintiff's constant complaints of knee pain, the defendants provided him with medication, ice bags, knee sleeves and wraps, multiple examinations by physicians and other medical personnel (both inside and outside his correctional institutions), x-rays and an MRI, surgery, numerous physical-therapy sessions, low-bunk assignments, grab bars by his cell toilet, high-raise toilet seats, chairs for phone use, limited-activity restrictions, and assignment to a "medical module."

Some members of the NDCS medical staff undoubtedly made poor judgment calls at times, but those mistakes constituted negligence, not constitutional violations.

(*See* Filing 1-1 at CM/ECF pp. 38, 46, 80-87, 93 (after knee surgery and spending a day recovering in the TSCI hospital, Plaintiff was released with only a cane, despite surgeon's orders of no weight-bearing on knees); Filing 1-1 at CM/ECF p. 39 (after surgery, Plaintiff was returned to an upper-tier cell which required stair-climbing with a cane).)

Because Plaintiff has already filed two complaints—including every conceivable medical record, grievance, disability determination, and notice of limited activity—further amendments as to this claim would be futile, and this claim must be dismissed for failure to state a claim upon which relief can be granted.

**B. ADA Claim**

While I have found that Plaintiff has failed to state an Eighth Amendment claim above, the ADA "prohibits a somewhat broader swath of conduct than the Constitution itself forbids." *United States v. Georgia*, 546 U.S. 151, 160 (2006). Plaintiff's requests for money damages and injunctive relief requiring that all NDCS employees acknowledge his "prescribed limitations and activities" and allow him to permanently "reside in a medically equipped cell" suggest a claim under the ADA.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A "public entity" under this provision includes state prisons, and "services, programs, or activities" includes medical care. *United States v. Georgia*, 546 U.S. at 154; *Mason v. Corr. Med. Servs., Inc.*, 559 F.3d 880, 886 (8th Cir. 2009). Title II requires that "'qualified individual[s] with a disability' are entitled to 'meaningful access' to such benefits." *Mason*, 559 F.3d at 886 (quoting *Randolph v. Rodgers*, 170 F.3d 850, 857-58 (8th Cir. 1999)). To allege a violation of Title II, Plaintiff "must specify a benefit to which he was denied

8

meaningful access based on his disability." *Mason*, 559 F.3d at 888 (citing 42 U.S.C. § 12132).

Under the ADA, there are two means of discrimination that appear relevant to this case: (1) disparate treatment (intentional discrimination) and (2) the failure to make reasonable accommodations. *Peebles v. Potter*, 354 F.3d 761, 765 (8th Cir. 2004) (comparing claims and the differing burdens of production and persuasion). The first type of ADA claim is based on the "employer's intent or actual motive," whereas in the second type of claim, "the 'discrimination' is framed in terms of the failure to fulfill an affirmative duty—the failure to reasonably accommodate the disabled individual's limitations. . . . The known disability triggers the duty to reasonably accommodate and, if the employer fails to fulfill that duty, we do not care if he was motivated by the disability." *Id.* at 767. *See also Sak v. City of Aurelia*, 832 F. Supp. 2d 1026, 1040 (N.D. Iowa 2011) (failure to accommodate is an independent basis for liability under the ADA, but accommodation is only required when necessary to avoid discrimination on the basis of disability, and accommodation must be reasonable (citing 28 C.F.R. § 35.130(b)(7)).

In order to sufficiently allege that the NDCS and its administrators and medical staff violated Title II of the ADA, Plaintiff must allege "(1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the jail's services, programs, or activities, or was otherwise subjected to discrimination by the jail; and (3) that such exclusion, denial of benefits, or other discrimination was by reason of his disability." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010); *see also Folkerts v. City of Waverly*, 707 F.3d 975, 983 (8th Cir. 2013); *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999). To recover compensatory damages, Plaintiff must prove discriminatory intent, which can be shown by the defendant's deliberate indifference to Plaintiff's rights under the ADA—specifically, the defendant's "deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally

9

protected rights." *Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011) (internal quotation and citation omitted).

In this case, the only jail "services" to which Plaintiff alleges he was entitled, but denied, are the medical services provided by his various correctional institutions. As discussed above, Plaintiff does not plausibly allege that he was denied meaningful access to medical services—nor *could* he in light of the thorough, prompt, and continuous medical care the defendants provided to Plaintiff. In any event, a lawsuit under the ADA cannot be based on medical-treatment decisions. *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005).

However, Plaintiff's complaints *do* appear to allege the second type of ADA discrimination—that is, that he was, and is, entitled to certain accommodations due to his immobility caused by knee and back problems, and NDCS's failure to provide such accommodations constitutes "discrimination by the jail . . . by reason of his disability." *Baribeau*, 596 F.3d at 484; *see United States v. Georgia*, 546 U.S. at 157 (noting "it is quite plausible that the alleged deliberate refusal of prison officials to accommodate [plaintiff's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constituted 'exclu[sion] from participation in or . . . deni[al of] the benefits of' the prison's 'services, programs, or activities.'" (quoting 42 U.S.C. § 12132)); *Maxwell v. Olmsted Cty.*, No. CIV. 10-3668, 2012 WL 466179, at *4 (D. Minn. Feb. 13, 2012) ("If [plaintiff] in fact made requests for accessible bathing facilities, and those requests went unanswered by the [detention center], he was denied access to a fundamental service or benefit under Title II."); *Allen v. Morris*, No. 4:93CV00398, 2010 WL 1382112, at *8 (E.D. Ark. Jan. 6, 2010), *report and recommendation adopted*, No. 4:93CV00398, 2010 WL 1382116 (E.D. Ark. Apr. 2, 2010) (considering, and allowing to go forward, claim that prison's failure to make reasonable accommodations that would enable obviously disabled plaintiff to safely shower constituted discriminatory intent under Title II of the ADA); *Muhammad v. Dep't of Corr.*, 645 F. Supp. 2d 299, 314 (D.N.J. 2008), *aff'd sub nom. Muhammad v. NJ Dep't of Corr.*, 396 F. App'x 789 (3d Cir. 2010)

10

("the transfer of Plaintiff, apparently without penological justification, to a cell which was painful for him to access and which had restricted access to the handicapped-accessible shower, when a reasonable accommodation appears to have been readily available, is sufficient to state a claim under Title II [of the ADA]" (internal quotation and citation omitted)).

Plaintiff should note that to properly allege a failure-to-accommodate claim under Title II of the ADA, Plaintiff must be a "qualified individual with a disability." The fact that the Social Security Administration previously approved Plaintiff's application for disability benefits is relevant, but "not dispositive for ADA purposes." *Burke v. North Dakota Dep't of Correction & Rehab.*, No. 1:07 CV 004, 2007 WL 1456217, at *7 (D.N.D. May 16, 2007) (citing cases); *Robinson v. Neodata Servs., Inc.*, 94 F.3d 499, 502 n.2 (8th Cir. 1996) ("Social Security determinations . . . are not synonymous with a determination of whether a plaintiff is a 'qualified person' for purposes of the ADA. At best, the Social Security determination was evidence for the trial court to consider in making its own independent determination." (citation omitted)).

Further, to properly state a failure-to-accommodate claim under Title II of the ADA, Plaintiff must allege that the defendants' failure to accommodate his alleged disability has prevented him from participating in specific programs and activities at his correctional institution. For example, Plaintiff ***must specify*** the inadequate accommodations that are the basis for his claim (such as failure to assign him to a permanent cell that is located on the main floor so as not to require him to climb stairs and that has grab bars by the toilet and a lower bunk). Plaintiff ***must also specifically identify*** the activities, services, and programs in which he cannot participate due to the defendants' failure to accommodate Plaintiff's disability. *See Madden v. Missouri Dep't of Corr.*, No. 2:11-CV-04087, 2011 WL 3101826, at *3 (W.D. Mo. July 25, 2011) (plaintiff alleged sufficient facts to permit court to conclude ADA claim was plausible because plaintiff alleged that defendants' refusal to allow him to continue to use an electric wheelchair prevented him from meaningfully accessing and

participating in the dining hall, medical services, educational programs, use of the library, use of the gym and "yard" for recreation, social meetings, and religious activities and functions).

I shall grant Plaintiff leave to file an amended complaint to state a plausible failure-to-accommodate claim against the NDCS and its employees in their official capacities[6] under Title II of the ADA.  Plaintiff's amended complaint ***shall not contain attachments***; shall be considered supplemental to Plaintiff's other two complaints; and shall allege ***only*** a failure-to-accommodate claim against defendants NDCS and its employees in their official capacities under Title II of the ADA.  As discussed in the preceding paragraph, Plaintiff's second amended complaint shall specify the insufficient accommodations that are the basis for his claim and specifically identify the activities, services, and programs in which he cannot participate due to the defendants' failure to accommodate Plaintiff's alleged disability.[7]

**C.  State-Law Claim**

Plaintiff purports to bring a claim under the Nebraska Correctional Health Care Services Act, Neb. Rev. Stat. §§ 83-4,153 to 83-4,165 (Westlaw 2016), which requires the NDCS to "provide a community standard of health care to all inmates" by appointing a medical director; implementing a "credentialing" process for each health-care staff member; meeting staffing and clinic-availability requirements; implementing, reviewing, and documenting medical treatment protocols; developing a quality-assurance program; and getting accredited.  Neb. Rev. Stat. §§ 83-4,155 to 83-4,165.

As to Plaintiff's request for monetary relief, I find no statutory language, legislative history, or case law stating that the Nebraska Correctional Health Care Services Act creates a private cause of action for money damages.  *Stonacek v. City of Lincoln*, 782 N.W.2d 900, 909 (Neb. 2010) ("where the Legislature has not by its

express terms or by implication provided for civil tort liability, under principles of judicial restraint, it is prudent that we not do so"; the Legislature's purpose in enacting a statute is central to determining whether statute creates private civil liability); *Prof'l Mgmt. Midwest, Inc. v. Lund Co.*, 826 N.W.2d 225, 233 (Neb. 2012) ("Whether a statute creates a private right of action depends on the statute's purpose and whether the Legislature intended to create a private right of action."); Jan. 24, 2001, Nebraska Statement of Intent, 2001 Regular Session, Legislative Bill 154, NE Intent Stat., 2001 Reg. Sess. L.B. 154 (no mention of purpose to provide private cause of action); Jan. 24, 2001, Nebraska Committee Statement, 2001 Regular Session, Legislative Bill 154, NE Comm. Stat., 2001 Reg. Sess. L.B. 154 (same).

As to Plaintiff's request for injunctive relief:

> The Eleventh Amendment precludes a federal court from ordering a state, including its agencies or officials, to conform their conduct to state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984); *Treleven v. University of Minn.*, 73 F.3d 816, 819 n.4 (8th Cir.1996). A state may, of course, waive its *Pennhurst* immunity. However, waiver will be found only based upon "the most express language" or other "overwhelming implications from the text as will leave no room for any other reasonable construction."

*Randolph v. Rodgers*, 170 F.3d 850, 859 (8th Cir. 1999) (some citations omitted). Here, there is no allegation or other indication that Nebraska has waived its Eleventh Amendment immunity to any possible claims under the Nebraska Correctional Health Care Services Act.

Accordingly, Plaintiff's purported state-law claim under the Nebraska Correctional Health Care Services Act, Neb. Rev. Stat. §§ 83-4,153 to 83-4,165 (Westlaw 2016), shall be dismissed for failure to state a claim upon which relief can be granted.

IT IS ORDERED:

1. Plaintiff's 42 U.S.C. § 1983 claims for monetary relief for alleged past violations of the Constitution against defendant NDCS and all other defendants in their official capacities are barred by the Eleventh Amendment and are dismissed;

2. Plaintiff's 42 U.S.C. § 1983 claims brought under the Eighth and Fourteenth Amendments alleging that the defendants in their individual capacities subjected him to cruel and unusual punishment by being deliberately indifferent to his serious medical needs are dismissed for failure to state a claim upon which relief can be granted;

3. Plaintiff's purported state-law claim under the Nebraska Correctional Health Care Services Act, Neb. Rev. Stat. §§ 83-4,153 to 83-4,165 (Westlaw 2016), is dismissed for failure to state a claim upon which relief can be granted;

4. On the court's own motion, the court will give Plaintiff 30 days in which to file an amended complaint that states a plausible failure-to-accommodate claim against the NDCS and the remaining defendants in their official capacities under Title II of the ADA. Plaintiff's amended complaint ***shall not contain attachments***; shall be considered supplemental to Plaintiff's other two complaints; and shall allege ***only*** a failure-to-accommodate claim under Title II of the ADA. Plaintiff must allege that the defendants' failure to accommodate his alleged disability has prevented him from participating in specific programs and activities at his correctional institution. For example, Plaintiff ***must specify*** the inadequate accommodations that are the basis for his claim (such as failure to assign him to a permanent cell that is located on the main floor so as not to require him to climb stairs and that has grab bars by the toilet and a lower bunk). Plaintiff ***must also specifically identify*** the activities, services, and programs in which he cannot participate due to the defendants' failure to accommodate Plaintiff's disability;

5.      Failure to file an amended complaint within 30 days will result in the court dismissing this case without further notice to Plaintiff; and

6.      The clerk of the court is directed to set the following pro se case management deadline: October 24, 2016: check for amended complaint.

DATED this 21st day of September, 2016.

BY THE COURT:
s/ *Richard G. Kopf*
Senior United States District Judge

## ENDNOTES

1. *See* Filing 1 at CM/ECF p. 57 (ibuprofen provided four times daily as needed); Filing 1 at CM/ECF pp. 67-69 ("Notice of Medical Limited Activity" limiting use of Plaintiff's right knee issued; given ice bag for swelling); Filing 1 at CM/ECF pp. 70-72 (knee sleeve issued); Filing 1 at CM/ECF pp. 86-87 (Notice of Medical Limited Activity issued limiting standing to 20 minutes at a time, lifting to 10 pounds, and working with limited use of knee until seen by medical; given Ace bandage and ice bag); Filing 1 at CM/ECF p. 90 (issued work restriction of no standing greater than three hours); Filing 1-1 at CM/ECF pp. 33-34 (Notice of Medical Limited Activity restricting lifting, sports, kneeling, squatting issued); Filing 1-1 at CM/ECF p. 60 (after Plaintiff moved to TSCI, knee brace issued); Filing 1-1 at CM/ECF p. 62 (after move to TSCI, Notice of Medical Limited Activity issued, limiting lifting and sports); Filing 1-1 at CM/ECF pp. 37 & 70 (Plaintiff given medical pass to have chair available for phone calls); Filing 1-1 at CM/ECF p. 72 (Tramadol given to address Plaintiff's complaints of pain); Filing 1-1 at CM/ECF p. 66 (Notice of Medical Lay-in issued, requiring Plaintiff to remain in cell except for meals, pill call, and medical appointments); Filing 1-1 at CM/ECF p. 39, Filing 1-2 at CM/ECF pp. 4-10 & 48, Filing 1-3 at CM/ECF p. 6 (post-surgery physical therapy on 1/27/14, 2/3/14, 2/10/14, 2/24/14, 3/3/14 (Plaintiff was "no show"), 3/10/14, 4/14/14, 5/15/14, 5/19/14 ("no show"), 7/28/14, 8/4/14, 1/27/14, 2/3/14, 2/10/14, 2/24/14, 3/3/14 ("no show"), 3/10/14, 4/14/14, 5/15/14, 5/19/14 ("no show"), 7/28/14, 8/4/14); Filing 1-2 at CM/ECF p. 28 (ibuprofen prescribed for knee pain); Filing 1-1 at CM/ECF p. 42 (Dr. Damme issues high-raise toilet seat; ice and ibuprofen prescribed when Plaintiff injured himself trying to use it); Filing 1-4 at CM/ECF p. 14 (Plaintiff given bottom-bunk pass and assigned to bottom-tier cell with hand rail in toilet area); Filing 1-4 at CM/ECF p. 36 (chair issued to Plaintiff for phone use); Filing 1-3 at CM/ECF pp. 5-6 (Notice of Medical Limited Activity issued providing Plaintiff should not kneel or squat for one year); Filing 1-4 at CM/ECF pp. 46, 50 (ice bags issued on 1/5/16 & 2/8/16).

2. *See* Filing 1 at CM/ECF pp. 70-72 (Plaintiff sent to sick call; x-ray ordered); Filing 1 at CM/ECF p. 73 (x-ray performed on right knee showing no evidence of fracture or dislocation, but evidence of "mild tricompartment degenerative change" and "moderate joint effusion"); Filing 1-1 at CM/ECF p. 31 (x-ray of right knee, finding "mild degenerative changes," but "no acute osseous abnormality," no fracture or dislocation, and no significant soft-tissue swelling); Filing 1 at CM/ECF pp. 60-62 (Randy Kohl, M.D., arranged for assessment by Dr. Casebolt and x-rays); Filing 1 at

CM/ECF p. 63 & Filing 1-1 at CM/ECF p. 32 (Dr. Kohl contacts LCC medical staff, who reports that Dr. Ferguson is addressing Plaintiff's orthopedic concerns); Filing 1-1 at CM/ECF p. 35 (more imaging of right knee finding no fracture, dislocation, or acute osseous abnormality, but finding "tricompartmental degenerative joint space narrowing and osteophyte formation"); Filing 1-1 at CM/ECF p. 41 (x-ray of both knees, finding normal left knee and mild degenerative change in right knee); Filing 1-1 at CM/ECF pp. 75-77 (exam by Dr. Harris of Nebraska Orthopedic & Sports Medicine; MRI ordered); Filing 1-1 at CM/ECF pp. 73-74 (MRI of left knee); Filing 1-1 at CM/ECF pp. 88-90 (exam by Dr. Harris; surgery recommended); Filing 1-2 at CM/ECF p. 14 (post-surgery follow-up with Dr. Harris); Filing 1-2 at CM/ECF p. 15 (follow-up with Dr. Harris, who recommends that Plaintiff remain in medical module indefinitely); Filing 1-2 at CM/ECF pp. 23 & 26 (Dr. Damme consults with Dr. Harris regarding Plaintiff's stair-climbing, assistive devices, remaining in medical module); Filing 1-4 at CM/ECF p. 18 (exam with Dr. Damme); Filing 1-2 at CM/ECF p. 63 (doctor visit); Filing 1-3 at CM/ECF pp. 20-23, Filing 1-4 at CM/ECF pp. 40 & 42-43 (seen by TSCI medical provider four times in March 2015).

3.  *See* Filing 1-1 at CM/ECF pp. 80-87 (arthroscopic surgery on left knee by Dr. Harris).

4.  *See* Filing 1 at p. 67 (lower bunk assignment for 14 days); Filing 1 at CM/ECF p. 81 (lower bunk assignment renewed for 30 days); Filing 1-1 at CM/ECF pp. 33-34 (Plaintiff permanently reassigned to low bunk); Filing 1-1 at CM/ECF p. 40 (Plaintiff transferred to medical module and cell per Dr. Harris's recommendation).

5.  *See* Filing 1 at CM/ECF p. 91 & Filing 1-1 at CM/ECF pp. 15-16 (prison medical records showing review of Plaintiff's records from Lancaster County and Douglas County Department of General Assistance; because reports only limited prolonged standing, Plaintiff denied lower bunk and no-work status); Filing 1 at CM/ECF p. 95 (prison medical staff agrees to review Plaintiff's records from Nebraska Orthopaedic Associates after Plaintiff complains that he cannot continue sleeping in a "tub" bed or cot without aggravation from kneeling, crouching, stooping); Filing 1 at CM/ECF p. 94 (prison medical staff seeks to get Plaintiff's records from Nebraska Orthopaedic Associates, which erroneously states that Plaintiff was never patient of that office); Filing 1-1 at CM/ECF p. 25 (NDCS checks with offices of ombudsman, Dr. Kohl, and Director Houston for the Plaintiff's records, to no avail; NDCS again contacts Nebraska Orthopaedic Associates, which discovers they actually *do* have Pl's records; records then sent);

6.     Public officials cannot be sued in their individual capacities under the ADA; therefore, I construe Plaintiff's ADA claim to be asserted only against the NDCS and its employees in their official capacities. *See Dinkins v. Correctional Med. Svs.*, 743 F.3d 633 (8th Cir. 2014) (correctional officers could not be sued in their individual capacities under the ADA); *Alsbrook v. City of Maumelle*,184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc) (explaining that Title II provides disabled individuals redress for discrimination by a "public entity," which does not include individuals).

7.     Plaintiff should note that the NDCS and its administrators and medical staff may be liable in their official capacities for prospective ***injunctive relief***. *Dinkins*, 743 F.3d at 633 (reversing dismissal of viable ADA claims for injunctive relief against correctional officers in their official capacity, the state, and the state department of corrections based on denial of adequate housing because of inmate's disability); *Randolph v. Rodgers*, 253 F.3d 342, 348 (8th Cir. 2001) (permitting ADA claims for prospective injunctive relief against state official sued in official capacity). Plaintiff should also be aware that his ADA claim for ***money damages*** may be subject to an Eleventh Amendment defense. The Supreme Court has decided that "insofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *United States v. Georgia*, 546 U.S. 151, 159 (2006) (disabled inmate in state prison may sue state for money damages under Title II of the ADA where the alleged conduct actually violated both the Eighth Amendment and Title II of the ADA). That is, if the official-capacity defendants' conduct violates Title II of the ADA, as well as the Eighth and Fourteenth Amendments, Plaintiff may have a damages claim under the ADA against the NDCS and its official-capacity administrators and medical staff. *Dinkins*, 743 F.3d at 633. However, in deciding whether a state agency or its employees in their official capacities can be held liable for damages under Title II of the ADA, or whether they are immune from suit under the Eleventh Amendment, the court must determine on a case-by-case basis "(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *United States v. Georgia*, 546 U.S. at 159. It is premature to conduct such an analysis now.